# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 36920/36921

STATE OF IDAHO,      )
     )
      Plaintiff-Respondent,      )
     )
v.      )
     )
JOHN JOSEPH DELLING,      )
     )
      Defendant-Appellant.      )
     )

**Boise, November 2011 Term,**

**2011 Opinion No. 128**

**Filed: December 1, 2011**

**Stephen W. Kenyon, Clerk**

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah Ann Bail, District Judge.

Judgment, conviction and sentence for two counts of second-degree murder, <u>affirmed.</u>

Molly J. Huskey, Idaho State Appellate Public Defender, Boise, for appellant. Spencer J. Hahn, Deputy Appellant Public Defender argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. John C. McKinney, Deputy Attorney General argued.

---

BURDICK, Chief Justice

John Joseph Delling (Delling) appeals from the judgments of conviction based on his conditional pleas of guilty to two counts of second-degree murder. Delling requests that this Court reconsider and overrule its decision in *State v. Searcy*, 118 Idaho 632, 798 P.2d 914 (1990), and find that Idaho's abolition of the insanity defense is unconstitutional. Delling also asserts that the district court abused its discretion and imposed excessive sentences.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Delling was initially charged with two counts of first-degree murder for the deaths of David Boss and Brad Morse. These counts were later amended to second-degree murder. Shortly after being charged, Delling's counsel motioned for a mental health evaluation to determine whether Delling was fit to proceed and able to aid in his own defense. An examination was ordered by the district court under I.C. § 18-211. On February 27, 2008,

1

Delling was found to lack fitness to proceed, and the district court issued an order of commitment pursuant to I.C. § 18-212. After nearly a year, the district court found that Delling's mental state had improved and that he would be capable of aiding in his own defense.

Before trial, Delling's counsel filed a notice of an intent to produce psychological evidence to show that Delling was incapable of forming the required mens rea. The State responded by filing a motion to allow mental health experts access to Delling in order to conduct an evaluation under I.C. § 18-207(4)(c). Delling objected, arguing that such mandated access would violate his right to remain silent and be free from self-incrimination.

Delling's motion also asked the district court to declare I.C. § 18-207, the legislative abrogation of mental condition as a defense, unconstitutional on its face and as applied. More specifically, the motion argued that the statute violates the 5th, 6th, 8th, and 14th Amendments to the U.S. Constitution and Article 1, Sections 2, 7, and 13 of the Idaho Constitution. The district court denied the motion, holding that "[s]imply because Idaho does not recognize an insanity defense does not mean that mentally ill offenders are deprived of any right recognized under either the United States Constitution or the Idaho Constitution."

Delling agreed to enter a conditional plea of guilty to second-degree murder, preserving the right to appeal the decision on his motion to declare I.C. § 18-207 unconstitutional, in both cases, in exchange for the prosecutor's recommendation of concurrent sentences. Upon pleading guilty, Delling was sentenced to determinate life for the second-degree murder of Brad Morse, set to run concurrently with his determinate life sentence for pleading guilty to the second-degree murder of David Boss. Delling timely appealed the judgment.

## II. ANALYSIS

### A. Idaho's abolition of the insanity defense does not violate Delling's due process rights under the Idaho Constitution or his Sixth, Eighth, and Fourteenth Amendment rights under the United States Constitution.

In 1982, the Idaho Legislature repealed I.C. § 18–209 ("[m]ental disease or defect excluding responsibility as an affirmative defense") and enacted new language in I.C. § 18–207(a) to provide that "[m]ental condition shall not be a defense to criminal conduct," which abolished the insanity defense in criminal cases.[1] *See* Idaho Sess. Laws, ch. 368, §§ 1 and 2 (1982). Delling argues that the United States Supreme Court has repeatedly held "that, while no

---

[1] Idaho is one of four states that have abolished the insanity defense. Montana, Utah, and Kansas are the others. Nevada had previously abolished the insanity defense, a move that was overturned in *Finger v. State*, 27 P.3d 66 (Nev. 2001).

specific type of insanity test is constitutionally-mandated, the ability of a defendant to raise the issue of insanity with respect to criminal responsibility is required under the due process clauses of the Fifth and Fourteenth Amendments." Additionally, Delling argues that the abolition of the insanity defense violates his Sixth Amendment right to present a defense, and his Eighth Amendment protection from cruel and unusual punishment. In response, the State argues that I.C. § 18-207 has been repeatedly upheld by this Court, and that Delling has failed to show that these previous decisions are wrong.

1. Standard of Review

"Constitutional issues are purely questions of law over which this Court exercises free review." *Meisner v. Potlatch Corp.*, 131 Idaho 258, 261, 954 P.2d 676, 679 (1998) (quoting *Harris v. State Dept. of Health & Welfare,* 123 Idaho 295, 297, 847 P.2d 1156, 1158 (1992)). "The party asserting the unconstitutionality of a statute bears the burden of showing its invalidity and must overcome a strong presumption of validity." *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990) (citing *Leliefeld v. Johnson,* 104 Idaho 357, 659 P.2d 111 (1983)). "It is generally presumed that legislative acts are constitutional, that the state legislature has acted within its constitutional powers, and any doubt concerning interpretation of a statute is to be resolved in favor of that which will render the statute constitutional." *Id.* (citing *State v. Rawson,* 100 Idaho 308, 597 P.2d 31 (1979)).

2. The abolition of the insanity defense does not violate Delling's due process rights under the United States and Idaho Constitutions.

Delling argues that Idaho's abolition of the insanity defense violates his due process rights under the 14th Amendment of the United States Constitution and Article I, § 13 of the Idaho Constitution. He contends that the insanity defense predates both constitutions, having a long history back to the reign of Edward I in the 13th Century.[2] As such, he argues the defense is included in the respective due process clauses of both constitutions. Article I, Section 13 of the Idaho Constitution states that no person shall be "deprived of life, liberty or property without

_____

[2] As part of his historical argument, Delling relies on Justice McDevitt's dissent in *Searcy*, which traced the roots of the insanity defense. 118 Idaho at 646, 798 P.2d at 928 (McDevitt, J., dissenting). Because I.C. § 18-207 "continues to recognize the basic common law premise that only responsible defendants may be convicted," he proper assessment here should focus on the constitutionality of the statute, not the history of the insanity defense. *Id.* at 635, 798 P.2d at 917. A focus on constitutionality makes this situation distinct from this Court's split opinion in *State v. Pina*, 149 Idaho 140, 233 P.2d 71 (2010). In *Pina*, this Court used a historical approach to interpret the meaning of the contemporary felony-murder statute, not to analyze the constitutionality of that statute. *Id.* at 145–46, 233 P.2d at 76–77.

3

due process of law." Idaho Const. Art. I, § 13. Similarly, the 14[th] Amendment to the United States Constitution ensures that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

Prior to 1982, Idaho utilized various forms of the insanity defense, most recently the Model Penal Code version of the defense. *State v. White*, 93 Idaho 153, 160, 456 P.2d 797, 804 (1969). Once the insanity defense was abolished, Idaho shifted to a model that focused on whether a defendant could form the criminal intent necessary to be guilty of the crime to which they stand accused.

> Idaho Code § 18-207 does not remove the element of criminal responsibility for the crime. The prosecution is still required to prove beyond a reasonable doubt that a defendant had the mental capacity to form the necessary intent. Idaho Code § 18-207 merely disallows mental condition from providing a complete defense to the crime and may allow the conviction of persons who may be insane by some former insanity test or medical standard, but who nevertheless have the ability to form intent and to control their actions. The statute expressly allows admission of expert evidence on the issues of mens rea or any state of mind which is an element of the crime. *See* I.C. § 18-207(b). In addition, the statutes require the sentencing judge to consider and receive evidence of the mental condition of the defendant at the time of sentencing. I.C. § 19-2523. This statutory process provides the necessary safeguards and does not offend the principles of due process as required by the Fourteenth Amendment to the United States Constitution.

*State v. Card*, 121 Idaho 425, 430, 825 P.2d 1081, 1086 (1991).

Delling argues that this approach has been shown to be inadequate and unconstitutional. As part of his argument, Delling cites *Finger v. State*, a 2001 decision that invalidated Nevada's abolishment of the insanity defense. 27 P.3d 66 (Nev. 2001). In *Finger*, the Nevada Supreme Court held that the legislature cannot abolish insanity as a complete defense because it is protected by the Nevada and United States Constitutions.[3] *Id*. at 84. *Finger* took issue with the mens rea model, finding that a focus on intent eliminates the concept of wrongfulness and "ignores the fact that most crimes have a required element of knowledge, willfulness or something beyond the mere performance of an act." *Id.* at 75. This case complements Delling's argument that the insanity defense predates the Idaho and U.S. Constitutions, and therefore is

---

[3] "The Legislature is free to decide what method to use in presenting the issue of legal insanity to a trier of fact, *i.e.,* as an affirmative defense or rebuttable presumption of sanity. It may also determine that legal insanity be proven by the defendant by any one of the established standards. But it cannot abolish legal insanity or define it in such a way that it undermines a fundamental principle of our system of justice." *Finger*, 27 P.3d at 84.

included within the due process clauses of both documents. However, this conclusion differs from this Court's previous holdings on the subject.

This Court has confirmed the constitutional validity of I.C. § 18–207 in a number of opinions. *State v. Searcy* was the first opinion in that line of cases. 118 Idaho 632, 798 P.2d 914 (1990). In *Searcy*, the defendant was convicted of first-degree murder and sentenced to determinate life. *Id*. at 634, 798 P.2d at 916. Searcy appealed the sentence, arguing, among other things, that the abolition of the insanity defense prevented him from presenting a defense. *Id*. He claimed that the abolition violated his due process rights by depriving him of a fundamental principle of liberty. *Id*. In a divided decision, this Court upheld the constitutionality of I.C. § 18-207, holding that the statute did not violate any due process rights.

> Accordingly, we conclude . . . that due process as expressed in the Constitutions of the United States and of Idaho does not constitutionally mandate an insanity defense and that I.C. § 18-207 does not deprive the defendant Searcy of his due process rights under the state or federal Constitution.

*Searcy*, 118 Idaho at 637, 798 P.2d at 919. The ruling was based in part on the United States Supreme Court's opinions in *Powell v. Texas*, 392 U.S. 514 (1968), *Leland v. Oregon*, 343 U.S. 790 (1952), and then-Justice Rehnquist's dissent in *Ake v. Oklahoma*, 470 U.S. 68 (1985) (Rehnquist, J., dissenting).

Subsequent cases have upheld the ruling in *Searcy*. In *Card*, the defendant was also convicted of first-degree murder but was sentenced to death. 121 Idaho at 428, 825 P.2d at 1084. Card's defense mirrored Searcy's, and included a claim that I.C. § 18-207 abridges his right to a jury, since a judge hears evidence of mental defect rather than a jury. *Id*. at 430, 825 P.2d at 1086. The opinion of this Court relied heavily on the *Searcy* opinion, again upholding the constitutionality of I.C. § 18-207.

In *State v. Winn*, this Court was faced with an Eighth Amendment challenge to the insanity defense. 121 Idaho 850, 828 P.2d 879 (1992). Winn was convicted of first-degree murder and claimed on appeal that the abrogation of the insanity defense constituted cruel and unusual punishment. *Id*. at 853–54, 828 P.2d at 882–83. This Court declined to elaborate on past cases, noting that it "is well established that the absence of an insanity defense in capital cases does not violate any constitutional protections." *Id*. at 854, 828 P.2d at 883.

In *State v. Moore*, the defendant was charged with the first-degree murder of his wife. 126 Idaho 208, 880 P.2d 238 (1994). On appeal, Moore asked that this Court find I.C. § 18-207

5

unconstitutional. Citing stare decisis, this Court declined to address the argument. "This Court has repeatedly confirmed the constitutional validity of I.C. § 18–207, which eliminated mental condition as a defense in criminal proceedings." *Id*. at 210, 880 P.2d at 240.

Delling argues that recent United States Supreme Court opinions have cast doubt on the wisdom of the above mentioned rulings. Specifically, he points to the Supreme Court's opinion in *Clark v. Arizona,* 548 U.S. 735 (2006). He argues that in light of *Clark*, this Court's reliance on *Leland*, *Powell*, and then-Justice Rehnquist's dicta in *Ake* is no longer justified.

In *Clark*, the Court upheld the constitutionality of an Arizona statute that narrowed the insanity test to the second prong of the M'Naughten test by eliminating the cognitive incapacity element. 548 U.S. at 779. Clark argued that the M'Naughten test represented the minimum that a government must provide. *Id*. at 748. Under the Arizona law, a defendant will not be adjudged insane unless he demonstrates that "at the time of the commission of the criminal act [he] was afflicted with a mental disease or defect of such severity that [he] did not know the criminal act was wrong," Ariz.Rev.Stat. Ann. § 13–502(A) (West 2001). The Court held that this channeling of mental disease and capacity evidence does not violate due process, nor does it offend any "principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Clark*, 548 U.S. at 779 (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)). "We have never held that the Constitution mandates an insanity defense, nor have we held that the Constitution does not so require. This case does not call upon us to decide the matter." *Id*. at 752 n.20. In *Clark* footnote 20, the Court specifically references I.C. § 18-207 when it lists the states that have no affirmative insanity defense but provided no opinion on the validity or invalidity of the Idaho statute. *Id*. However, the Court notes, as in other cases, the traditional recognition that each state has the capacity to define crimes and defenses. *Id*. at 749. Given all of this, *Clark* does not invalidate the reasoning in past Idaho opinions.

To date, the U.S. Supreme Court has chosen not to address the constitutionality of Idaho's insanity defense scheme, even though it has been presented with the opportunity to do so. The Court has declined to grant a writ of certiorari for any Idaho case on this matter. *See Stoddard v. Idaho,* 546 U.S. 828 (2005), and denied his petition for rehearing, *see* 546 U.S. 1135 (2006); *See also State v. Card,* 121 Idaho 425, 825 P.2d 1081, *cert. denied* 506 U.S. 915 (1992); *State v. Odiaga,* 125 Idaho 384, 871 P.2d 801 (1994), *cert. denied,* 513 U.S. 952, (1994); and *cert. denied,* 513 U.S. 955 (1994). While this in itself is not dispositive of anything, it reinforces the

6

language found in other U.S. Supreme Court opinions that these types of decisions are left to the states.

Delling also argues that Article I, Section 13 of the Idaho Constitution may be more protective of individual rights than the U.S. Constitution, citing *State v. Radford*, 134 Idaho 187, 190, 998 P.2d 80, 83 (2000) ("Idaho's due process provision in Article I, Section 13 of the Idaho Constitution is not 'necessarily bound by the interpretation given to due process by the United States Supreme Court'"). The State contends that Delling failed to present any argument at trial in regards to the Idaho Constitution providing greater protections than the U.S. Constitution, and is thus precluded from raising the issue here.[4]

"In interpreting provisions of the Idaho Constitution, this Court is free to interpret its constitution as more protective than the United States Constitution." *Garcia v. State Tax Comm'n of Idaho*, 136 Idaho 610, 614, 38 P.3d 1266, 1270 (2002) (quoting *State v. Thompson,* 114 Idaho 746, 748, 760 P.2d 1162, 1164 (1988)). "However, independent analysis under the Idaho Constitution does not mean that this Court will reach a different result from that reached by the U.S. Supreme Court under a similar constitutional provision." *Id*. (quoting *State v. McCaughey,* 127 Idaho 669, 673, 904 P.2d 939, 943 (1995)). The precedential cases from this Court have analyzed the due process issues under the Idaho and U.S. Constitutions without distinguishing the two, and we will continue to do the same. *Searcy*, 118 Idaho at 637, 798 P.2d at 919; *Card*, 121 Idaho at 429–30, 825 P.2d at 1085–86.

Idaho case law has found no abridgement of due process by I.C. § 18-207, due in part to the surrounding statutory framework. For example, under I.C. § 18-201(2), a person who has committed a criminal act without being conscious of it is legally incapable of committing a crime. In this context, the opinions referenced by Delling do not appear to question the wisdom of the statutes or the interpreting opinions. Additionally, as expounded upon below, evidence of mental illness is expressly allowed and can rebut the element of intent. As such, we hold that Delling's right to due process is not infringed by the abolition of the insanity defense.

   3. The abolition of the insanity defense does not violate Delling's Sixth Amendment right to present a defense.

---

[4] Delling contends that, while the argument may not have been particularly well developed, the issue was raised before the trial court. Delling raised the issue and cited legal authority in his motion to declare I.C. § 18-207 unconstitutional. The accompanying memorandum also contains argument and authority. Although there was no mention of the issue in the oral hearing, Delling preserved the argument for appeal.

7

Idaho Code Section 18–207 reduces the question of mental condition from the status of a formal defense to that of an evidentiary question. *State v. Beam*, 109 Idaho 616, 621, 710 P.2d 526, 531 (1985). In his initial brief, Delling argues that not only was insanity an appropriate defense, it was the only possible defense given the circumstances. Since the insanity defense had been abolished, Delling believes that he was denied the right to present a defense guaranteed by the Sixth Amendment. The Sixth Amendment provides, *inter alia*, that in a criminal prosecution, the accused enjoys the right to "have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.

In *Searcy*, this Court held that neither the federal nor the state Constitutions contain any language setting forth a right to an insanity defense. 118 Idaho at 636, 798 P.2d at 918. This Court went on to explain the case law that supported that conclusion.

> While the issue facing us today has never been directly decided by the United States Supreme Court, the language from several opinions of that Court suggests rather convincingly that that Court would conclude that the due process of the fifth amendment does not require the states to provide a criminal defendant with an independent defense of insanity. First, in *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), the United States Supreme Court rejected an argument that due process required the use of any particular insanity test and upheld an Oregon statute which placed on the criminal defendant the burden of proving his insanity defense, and then by proof beyond a reasonable doubt. In *Powell v. Texas,* 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968), the Supreme Court stated:
>
>> [T]his court has never articulated a general constitutional doctrine of *mens rea.*
>>
>> We cannot cast aside the centuries-long evolution of the collection of interlocking and overlapping concepts which the common law has utilized to assess the moral accountability of an individual for his antisocial deeds. The doctrines of *actus reus, mens rea,* insanity, mistake, justification, and duress have historically provided the tools for a constantly shifting adjustment of the tension between the evolving aims of the criminal law and changing religious, moral, philosophical, and medical views of the nature of man. *This process of adjustment has always been thought to be the province of the States.*
>
> 392 U.S. at 535-536, 88 S.Ct. at 2156, 20 L.Ed.2d at 1269 (emphasis added). Justice Marshall, in his *Powell* opinion, stated that 'nothing could be less fruitful than for this Court to be impelled into defining some sort of insanity test in constitutional terms.' 392 U.S. at 536, 88 S.Ct. at 2156. Justice Rehnquist recently reaffirmed this view in his dissenting opinion in *Ake v. Oklahoma,* 470 U.S. 68, 91, 105 S.Ct. 1087, 1100, 84 L.Ed.2d 53, 71 (1985), in which he wrote:

> [I]t is highly doubtful that due process requires a state to make available an insanity defense to a criminal defendant, but in any event if such a defense is afforded the burden of proving insanity can be placed on the defendant.

*Searcy*, 118 Idaho at 636, 798 P.2d at 918 (footnote omitted).

Delling takes issue with the interpretation of U.S. Supreme Court holdings by this Court, specifically *Powell v. Texas* and *Leland v. Oregon.* He claims that *Powell* is consistent with his argument that no specific insanity test is required, but the availability of a test, any test, is constitutionally mandated. This, he argues, is also consistent with the holding in *Leland.* In *Leland*, the defendant was convicted of first-degree murder in Oregon under a statute that required the defendant to establish an insanity plea beyond a reasonable doubt. 343 U.S. at 792–93. Leland argued that the statute violated the Constitution by shifting the burden and requiring him to disprove elements of the crime. *Id*. at 793. The Court disagreed with Leland, holding that the Oregon statute merely requires a heavier burden of proof than other states.

> The fact that a practice is followed by a large number of states is not conclusive in a decision as to whether that practice accords with due process, but it is plainly worth considering in determining whether the practice 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'

*Id*. at 798. However, the opinion does not say that the insanity defense is fundamental, nor is it set forth anywhere in *Leland* that an insanity defense is required. *See generally id*.

In *Powell*, the defendant appealed a conviction of public drunkenness, arguing that the application of a drunkenness statute to an alcoholic violated the Eighth Amendment. 392 U.S. at 531. In rejecting Powell's argument, the Court determined that Powell was arrested for being drunk in public and not for his status as an alcoholic. In dicta, the Court discussed the possibility of a constitutional doctrine of criminal responsibility if *Powell* is extended to "conditions" like insanity. *Id*. at 533–34. The Court stated that the wisdom of such a doctrine would be weighed against whether a constitutional ruling on insanity was required. *Id*. at 536. According to Delling, this discussion mandates the availability of some form of insanity defense. But the holding itself states that the issues of mens rea are always evolving and that it "is simply not yet the time to write the Constitutional formulas cast in terms whose meaning, let alone relevance, is not yet clear." *Id*. at 537. As noted above, "[t]he process of adjustment has always been thought

9

to be the province of the states." *Id*. at 536. In this context, past Idaho case law correctly interpreted these rulings from the U.S. Supreme Court.

Delling also argues the U.S. Supreme Court has found that the Sixth Amendment is violated when a defendant is arbitrarily deprived of testimony that would have been relevant, material, and vital to the defense. The abolishment of the insanity defense, he argues, has abridged his right to call witnesses who would otherwise provide relevant and vital testimony.

Although no longer a separate defense, evidence of mental illness or disability is still expressly permitted by statute to rebut state's evidence offered to prove criminal intent or mens rea. *Searcy*, 118 Idaho at 635, 798 P.2d at 917; I.C. § 18-207(3) ("Nothing herein is intended to prevent the admission of expert evidence on the issue of any state of mind which is an element of the offense . . . .").

Applied here, nothing in the statute prevents a witness from testifying about Delling's ability to form the requisite intent required to commit murder. In the absence of an insanity defense, Delling is still able to present a defense; it just takes a different form. If the state cannot prove criminal intent beyond a reasonable doubt, a defendant, sane or not, will be found not guilty.

The existing Idaho precedent holds that an independent defense of insanity is not required, and that evidence of mental illness can still be used to rebut the intent element of a crime. Delling's argument does not warrant the reversal of this Court's previous rulings. Therefore we find that I.C. § 18-207 does not violate Delling's Sixth Amendment right to present a defense.

4. <u>The abolition of the insanity defense does not violate Delling's Eighth Amendment protection from cruel and unusual punishment.</u>

Delling argues that I.C. § 18-207 violates the Eighth Amendment prohibition on cruel and unusual punishment because it fails to ensure that the legally insane are not punished for actions that would otherwise be criminal. The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Without the insanity defense, Delling argues that a mentally ill defendant is left with the sentencing guidelines put forth in I.C. § 19-2523, which could result in the infliction of cruel and unusual punishment. His argument centers on the U.S. Supreme Court holdings in *Penry v. Lynaugh*, 492 U.S. 302 (1989) (abrogated on other grounds by *Atkins v. Virginia*, 536 U.S. 304 (2002)), and *Ford v. Wainwright*, 477 U.S. 399 (1986).

10

In *Penry*, the Court considered whether executing a mentally-retarded defendant would be cruel and unusual punishment. 492 U.S. at 303. The Court reasoned that the execution of mentally-retarded people would not violate the Eighth Amendment, in part, because the insanity defense acts as a barrier. *Id.* at 333. "Because of the protections afforded by the insanity defense today, such a [mentally ill] person is not likely to be convicted or face the prospect of punishment." *Id.* Though *Penry* has been abrogated, Delling argues that its reasoning on the insanity defense should not be disregarded.

In *Ford*, Delling points to the language regarding the roots of the insanity defense. 477 U.S. at 406–08. *Ford* dealt with a habeas petition filed on behalf of a death row prisoner. *Id.* at 399. The Court held that the Eighth Amendment prohibits a state from executing an insane prisoner. "The bar against executing a prisoner who has lost his sanity bears impressive historical credentials . . . ." *Id.* at 406.

Though these two cases deal with the death penalty, Delling cites Justice Scalia's dissent in *Atkins*, which criticized that Court's "death-is-different" approach to insanity. 536 U.S. at 339–41, 349, 352 (Scalia, J., dissenting). The main thrust of Delling's argument is that in the absence of an insanity defense, the safeguards required by *Penry* and *Ford* do not exist in Idaho, leaving open the possibility for an Eighth Amendment violation.

This line of argument was addressed squarely by this Court in *Card*.

> We agree with the views of the United States Supreme Court but note that the safeguard referred to in *Penry* is in place in Idaho. Under Idaho law, an individual must be found competent to stand trial. I.C. § 18-210. In addition, those individuals who are incapable of forming the necessary intent needed for the crime are protected by the mens rea requirements of I.C. §§ 18-114, 18-115 and 18-207. Finally, those 'profoundly or severely retarded' individuals who do not fall under the first two protections and are convicted and who are 'wholly lacking capacity to appreciate the wrongfulness of their actions' are protected by the sentencing provisions of I.C. § 19-2523. Idaho Code § 19-2523 specifically requires the sentencing court to consider '[t]he capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law at the time of the offense charged.' Accordingly, we hold that the absence of the insanity defense in capital cases does not violate any constitutional protections.

*Card*, 121 Idaho at 429, 825 P.2d at 1085 (footnotes omitted). Additionally, I.C. § 19-2515(A) explicitly prohibits the imposition of the death penalty upon the mentally retarded.

Delling also argues that the current state of the law requires a guilty yet insane defendant to be sentenced to prison unless a judge chooses to allow treatment, and that such a formulation

11

violates the Eighth Amendment. Idaho has two statutes that act as a safeguard in these circumstances, one acting before trial and the other at sentencing.

Idaho Code section 18-210 states that "No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted, sentenced or punished for the commission of an offense so long as such incapacity endures." This safeguard ensures that mentally incapacitated defendants cannot be convicted of a crime, thus making it impossible for an incapacitated person to be sentenced to prison. When mental health is an issue at sentencing, I.C. § 19-2524 provides guidance to trial judges. While the statute does not mandate any particular course of treatment or protocol for the mentally ill, it does show an acknowledgement that the truly mentally ill require treatment beyond that given to the average inmate.

Given the statutory framework, we find that Idaho's abolition of the insanity defense does not violate Delling's Eighth Amendment protection from cruel and unusual punishment.

5. Stare Decisis

As mentioned above, this Court has repeatedly confirmed the constitutional validity of I.C. § 18–207. "[T]he rule of stare decisis dictates that we follow [controlling precedent] unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *State v. Humpherys*, 134 Idaho 657, 660, 8 P.3d 652, 655 (2000) (quoting *Houghland Farms, Inc. v. Johnson,* 119 Idaho 72, 77, 803 P.2d 978, 983 (1990)).

This Court's previous rulings on I.C. § 18-207 have highlighted the importance of this doctrine. "Having previously decided this question, and being presented with no new basis upon which to consider the issue, we are guided by the principle of *stare decisis* to adhere to the law as expressed in our earlier opinions." *Odiaga*, 125 Idaho at 388, 871 P.2d at 805.

Delling has not provided any argument that shows the precedential cases to be wrongly decided, unwise, or unjust. By looking at each argument individually, none of Delling's constitutional rights have been infringed by the abolition of the insanity defense. Therefore we find that Delling failed to introduce legal authority that demonstrates the unconstitutionality of I.C. § 18-207 or any error by the district court.

**B. The district court did not abuse its discretion by imposing concurrent determinate life sentences following Delling's guilty pleas to two counts of murder.**

Delling agreed to plead guilty to second degree murder in both cases in exchange for the prosecutor's recommendation of concurrent sentences. Upon pleading guilty, Delling was sentenced to determinate life for each count of second degree murder, set to run concurrently. Delling now appeals, arguing that the district court abused its discretion when imposing sentence because it did not give adequate weight to mitigating factors, specifically Delling's mental illness.

1. Standard of Review

"Where the sentence imposed by a trial court is within statutory limits, 'the appellant bears the burden of demonstrating that it is a clear abuse of discretion.'" *State v. Windom*, 150 Idaho 873, __, 253 P.3d 310, 312 (2011) (quoting *State v. Stevens*, 146 Idaho 139, 148, 191 P.3d 217, 226 (2008)). When evaluating whether a sentence is excessive, this Court considers the entire length of the sentence under an abuse of discretion standard. *State v. Stevens*, 146 Idaho 139, 148, 191 P.3d 217, 226 (2008). When considering whether the trial court abused its discretion, this Court considers: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of its discretion and consistently with the legal standards applicable; and (3) whether the trial court reached its decision by an exercise of reason. *Id*. at 143, 191 P.3d at 221. "In deference to the trial judge, this Court will not substitute its view of a reasonable sentence where reasonable minds might differ." *Id*. at 148–49, 191 P.3d. at 226–27.

2. The district court did not abuse its discretion by imposing concurrent fixed-life sentences following Delling's guilty pleas to two counts of second degree murder.

Delling argues that it was inappropriate for the district court to impose a fixed-life sentence, and that an indeterminate life sentence would be more appropriate. An indeterminate sentence would allow for a parole board, at some later date, to determine whether Delling has been rehabilitated and no longer poses a threat to society. Delling argues that this is especially important because the crimes were committed when he was incapable of appreciating the wrongfulness of his actions or conforming his conduct to the law. In response, the State argues that Delling has failed to show that his sentences are excessive under any reasonable view of the facts.

When a trial court exercises its discretion in sentencing, "the most fundamental requirement is reasonableness." *State v. Hooper*, 119 Idaho 606, 608, 809 P.2d 467, 469 (1991). A sentence is reasonable if it appears necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution. *State v. Lundquist*, 134 Idaho 831, 836, 11 P.3d 27, 32 (2000). When reviewing the reasonableness of a sentence this Court will make an independent examination of the record, "having regard to the nature of the offense, the character of the offender and the protection of the public interest." *State v. Shideler*, 103 Idaho 593, 594, 651 P.3d 527, 528 (1982). When considering the sentence to be imposed, if the defendant's mental condition is a significant issue, the sentencing judge must also weigh that mental condition as a sentencing consideration. I.C. § 19-2523; *Moore*, 126 Idaho at 211, 880 P.2d at 241.

Here, Delling's argument focuses on his mental health as a mitigating factor. When the defendant's mental health status is significant for sentencing purposes, I.C. § 19-2523 requires the court to look at several factors:

> (a) The extent to which the defendant is mentally ill; (b) The degree of illness or defect and level of functional impairment; (c) The prognosis for improvement or rehabilitation; (d) The availability of treatment and level of care required; (e) Any risk of danger which the defendant may create for the public, if at large, or the absence of such risk; (f) The capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law at the time of the offense charged.

I. C. § 19-2523(1)(a)–(f). However, the "defendant's mental condition is simply one of the factors that must be considered and weighed by the court at sentencing." *State v. Strand*, 137 Idaho 457, 461, 50 P.3d 472, 476 (2002). The statute does not require that a defendant's mental condition be the controlling factor at sentencing, nor does it require the district court to specifically reference all of the factors. *Id*. However, the record has to show that "the court adequately considered the substance of the factors" when it imposed the sentence. *Id*.

Here, the district court heard testimony regarding Delling's mental state, and discussed I.C. § 19-2523 during sentencing.

> [U]nfortunately, the facts in this case are . . . that the defendant unquestionably suffers from a very serious mental illness.
>
> He suffers from paranoid schizophrenia. It played a direct role in his conduct in this case, and it is most certainly a central issue in sentencing.
>
> . . .

The factors that are in play in a case of this type are the factors that are set forth in 19-2523, which is the statute that governs evidence of mental condition being offered at the time of sentencing, where the court determines that mental condition is a significant factor.

It is clear that the district court spent considerable time on the issues posed by I.C. § 19-2523(f), relating to the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

There is evidence of enormous premeditation around the deaths of these two young men, and the very serious attempt on the life of Jacob. And there's also evidence of the fact that there were four other people on a list who were also marked for death as a result of the defendant's deeply held delusions that other people were trying to steal his powers, and that their actions in his delusional thinking would result in his death.

I don't question that that's how he frames it in his own mind, but my function here is to protect society.

The district court went on to detail how Delling planned his attacks, and even how he learned from his failed attempt to kill Jacob Thompson. After detailing the complexity of the attacks, the district court did not believe that Delling had the ability to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.[5] However, his level of appreciation was to be balanced against other considerations.

In terms of 19-2523 factors, there is no question he is mentally ill. He suffers from paranoid schizophrenia. He is profoundly ill.

The degree of his functional impairment in terms of his delusional thinking is quite strong. Unfortunately — and I think it is unfortunate — his ability to plan intelligently and rationally is not likewise impaired. So considerable intelligence, considerable ability to plan and premeditate is unimpaired by the illness that he suffers from.

The prognosis for improvement or rehabilitation is at best speculative . . . .

Because of the seriousness of his illness and the extraordinary risk of danger that it presents for the public, treatment in his situation has to be in a structured institutional setting.

With these comments, the district court addressed several concerns put forth in Delling's appeal, principally Delling's need for treatment. The district court ended by explaining the reasons behind the fixed life sentence.

---

[5] As the district court noted in its Decision & Order Re: Constitutionality of I.C. § 18-207, "the inability of a person convicted of a crime to appreciate the wrongfulness of their conduct does not make that person less of a threat to society."

But in terms of assessing his risk to society and balancing the need to protect society against the speculation that there could some day be effective treatment, I think that the court is obligated as part of its duty to protect society, to recognize that his illness is such — it is at such an extraordinary level that it's cost two people their lives, it seriously injured someone else, and it is unfair and unreasonable to place society at any risk that he could conceal those delusions from someone else and take action again.

The district court then imposed the fixed life sentence and closed by adding that "it is essential that he be provided treatment."

The circumstances in this sentence are similar to the sentence handed down in *Card.* 121 Idaho at 439, 825 P.2d at 1095. In *Card*, the defendant claimed that his diminished capacity was a mitigating factor that should have been considered at trial. *Id*. This Court determined that the death sentence given by the district court properly weighed the mitigating factor of diminished capacity against the aggravating factors involved in the crime. *Id*.

The outcome in the present case should be no different. Delling pled guilty to two brutal murders, each of which involved a high level of planning and organization. Given Delling's particular mental health issues, the district court was correct in finding an unreasonable risk to society unless Delling was sentenced to fixed life. In this instance, Delling's mental state acts as both a potential mitigating factor and a reason to give a considerable sentence.

The sentence imposed by the district court is within the statutory allowances for second-degree murder. I.C. § 18-4004. From an examination of the record, the district judge adequately addressed the issues of mental illness as required by I.C. § 19-2523, and weighed those factors against the public interest as well as the nature of the offense. We find that the district court handed down a reasonable sentence and did not abuse its discretion.

### III. CONCLUSION

We uphold the constitutionality of I.C. § 18-207 and affirm the district court's denial of a motion to find otherwise. We also find that the sentence imposed by the district court is reasonable and not an abuse of discretion.

Justices EISMANN, J. JONES, W. JONES and HORTON **CONCUR.**

16