**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50260 |
| Plaintiff-Appellee, | D.C. No. 3:14-cr-01288-DMS-13 |
| v. | |
| WILBERT ROSS III, AKA Coy, AKA Coy Blue, AKA Wilbert Ross, | MEMORANDUM[*] |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50277 |
| Plaintiff-Appellee, | D.C. No. 3:14-cr-01288-DMS-9 |
| v. | |
| TERRY CARRY HOLLINS, AKA Caby, AKA Caby-3 and 3, | |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50357 |
| Plaintiff-Appellee, | D.C. No. 3:14-cr-01288-DMS-12 |
| v. | |

MARCUS ANTHONY FOREMAN,
AKA Missle,

       Defendant-Appellant.

---

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

  v.

JERMAINE GERALD COOK,
AKA Tre-O,

       Defendant-Appellant.

No. 16-50359

D.C. No. 3:14-cr-01288-DMS-10

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted April 10, 2019
Pasadena, California

Before: PAEZ and CLIFTON, Circuit Judges, and KATZMANN,[**] Judge.

Wilbert Ross III, Terry Carry Hollins, Marcus Anthony Foreman, and Jermaine Gerald Cook appeal their convictions and life sentences for conspiring to participate as gang members in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d). We address each of their seven claims, and we affirm.

2

1. Hollins, Foreman, and Ross were not wrongly denied self-representation rights under *Faretta v. California*, 422 U.S. 806 (1975). The district court's finding that Hollins made his request for purposes of delay and not in good faith was not clearly erroneous. Hollins made his first self-representation request twenty months after his indictment and just a short time before trial. He made all his requests after the court, in an effort to protect witnesses, had imposed limitations on the ability of the defendants personally to receive advance information regarding the identity of government witnesses. With most requests Hollins indicated a desire for more time to prepare, which would have required continuing the firm trial date. Though he ultimately said that he would proceed self-represented to trial as scheduled and under the limitation imposed regarding witness information, the district court explicitly noted in denying the request that Hollins had rights to both self-representation and "meaningful representation," creating a "Hobson's choice for the court." *See United States v. Farias*, 618 F.3d 1049, 1053 (9th Cir. 2010). The court had reason for concern that self-representation at that point would put both the trial date and the discovery limitation in jeopardy. The request for self-representation by Foreman was no stronger. He withdrew his request for self-representation, in any event, and never renewed it. Ross made his request in

the middle of trial, so the district court did not err in denying this untimely request. *See United States v. Carpenter*, 680 F.3d 1101, 1102 (9th Cir. 2012) (per curiam).

2. The district court also did not abuse its discretion in denying a motion to disqualify itself under 28 U.S.C. § 455(a) based on statements the district judge made while addressing Ross's concern that his attorney was not providing effective assistance. The judge expressed familiarity with the types of charges filed and the evidence presented to address Ross's concerns about his attorney's qualifications and conduct, but he did not "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

3. The court permissibly denied a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), after the government used a peremptory challenge on Juror No. 14, the only African American who remained eligible for jury selection. The government explained it was concerned about the potential juror's employment status, two children requiring childcare, residence in a neighborhood where drug dealing was controlled by defendants' gang, prior experience witnessing a crime where the victim did not press charges, and nervousness. The court's conclusion that there was no purposeful discrimination was not clearly erroneous. *See Tolbert v. Page*, 182 F.3d 677, 680 n.5 (9th Cir. 1999) (en banc). Although defendants

4

suggest the government's failure to strike other potential jurors with similar characteristics indicates purposeful discrimination, no other juror had the same disqualifying features. *See United States v. Alvarez-Ulloa*, 784 F.3d 558, 567 (9th Cir. 2015). Moreover, the government's substitution offer, while inartful, did not refute its race-neutral reasons for challenging Juror No. 14 in this context. *Id.*

4. The district court also permissibly denied a motion to suppress recordings of Hollins, Foreman, and a third alleged gang member during pretrial detention. Defendants argue this court should follow *United States v. Cohen*, 796 F.2d 20, 23-24 (2d Cir. 1986), in which the Second Circuit held that a pretrial detainee retained an expectation of privacy to challenge the warrantless physical search of his cell intended solely to bolster the prosecution's case. The Supreme Court has held that a convicted criminal does not have a Fourth Amendment expectation of privacy while incarcerated. *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984). The California Supreme Court has extended that conclusion to pretrial detainees, rejecting the approach taken in *Cohen*. *People v. Davis*, 115 P.3d 417, 428-29 (Cal. 2005). We do not have to resolve that difference because this case is unlike *Cohen*. There was no physical search here, and there was evidence the search was not intended solely to bolster the prosecution's case. The court did not abuse its discretion in finding that these defendants had no reasonable expectation of privacy

in their jail cell conversation and that law enforcement recorded their conversation based on real concerns about witness safety. *See United States v. Mayer*, 560 F.3d 948, 956 (9th Cir. 2009).

5. Although the state must refrain from improper litigation methods calculated to produce a wrongful conviction, it is also "obliged to 'prosecute with earnestness and vigor.'" *Cone v. Bell*, 556 U.S. 449, 469 (2009) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). Defendants identify a few instances when the court sustained defense objections to government questions and the government made negative statements about defendants and their counsel, but they have not established the district court abused its discretion in concluding misconduct did not occur. *United States v. Nadler*, 698 F.2d 995, 1001 (9th Cir. 1983). As the government concedes, its comment in rebuttal closing was improper, but it was harmless in light of its brevity and the district court's prompt curative instruction to the jury. *See United States v. Barragan*, 871 F.3d 689, 707-10 (9th Cir. 2017).

6. The court did not violate the Sixth Amendment or *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in imposing life sentences based on a special verdict form requiring the jury to unanimously agree that the government had proven beyond a reasonable doubt that each defendant agreed that a co-conspirator would

6

commit at least one of four enumerated offenses with maximum life penalties. By statute, a RICO conspiracy conviction can lead to a maximum sentence of life imprisonment "if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." 18 U.S.C. § 1963(a). Because of the special verdict form,[1] this case does not raise the same concerns as *United States v. Nguyen*, 255 F.3d 1335, 1343-44 (11th Cir. 2001).

7. Cumulative error does not mandate reversal because defendants have not established that "the combined effect of multiple trial court errors violates due process [because] it renders the resulting criminal trial fundamentally unfair." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007).

**AFFIRMED.**

---

[1]The government filed an unopposed motion for judicial notice of the same special verdict form used by the district court in another case. Although we do not rely on that form in deciding this case, we agree that we may take judicial notice of inferior court records from another case and therefore grant the motion. *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).