CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
ALDYKIEWICZ, SALUSSOLIA, and WALKER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant DANNY L. MCPHERSON[1]**
**United States Army, Appellant**

ARMY 20180214

Headquarters, United States Army Combined Arms Support Command
Andrew J. Glass and James Ewing, Military Judges
Colonel James D. Levine II, Staff Judge Advocate

For Appellant: Major Steven J. Dray, JA (argued); Lieutenant Colonel Tiffany D. Pond, JA; Major Julie L. Borchers, JA; Major Steven J. Dray, JA (on brief); Colonel Elizabeth G. Marotta, JA; Lieutenant Colonel Tiffany D. Pond, JA; Major Benjamin A. Accinelli, JA; Major Steven J. Dray, JA (on reply brief and brief on specified issues).

For Appellee: Captain John D. Martorana, JA (argued); Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Lieutenant Colonel Wayne H. Williams, JA; Captain John D. Martorana, JA (on brief); Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Dustin B. Myrie, JA; Captain John D. Martorana, JA (on brief on specified issues).

Amicus Curiae for Appellant: Rachael Jensen (law student) (argued); Joshua Davis (law student); Amy Gordon (law student); Rachael Jensen (law student); Stephen I. Vladek, Esquire (supervising attorney) (on brief) — the University of Texas at Austin School of Law.

28 September 2020

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

---

[1] This case was argued at The University of Texas at Austin School of Law on 13 February 2020 as part of the Army Court of Criminal Appeals' outreach program.

ALDYKIEWICZ, Senior Judge:

"When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1737 (2020).

> The place to make new legislation, or address unwanted consequences of old legislation, lies in Congress. When it comes to statutory interpretation, our role is limited to applying the law's demands as faithfully as we can in the cases that come before us. As judges we possess no special expertise or authority to declare for ourselves what a self-governing people should consider just or wise. And the same judicial humility that requires us to refrain from adding to statutes requires us to refrain from diminishing them.

*Id.* at 1753.

## I. OVERVIEW

Appellant stands convicted, inter alia,[2] of six specifications of indecent acts or liberties with his ten-year-old biological daughter (KR) in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (2000) [UCMJ]. The acts occurred in 2004. Charges were preferred and received by the Summary Court Martial Convening Authority (SCMCA) on 27 March 2017, and prosecuted to findings on 13 March 2018.

The only issue on appeal is whether appellant's indecent acts charge and specifications were statutorily time-barred. That is, did the general five-year statute of limitations found in Article 43(b)(1), UCMJ, apply, or were the offenses covered by Article 43(b)(2)'s extended limitations period for child abuse offenses. Appellant argues that, as a result of the 2016 amendments to Article 43, UCMJ, the statute of limitations applicable to the offenses involving KR had already expired when

---

[2] A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of six specifications of indecent acts with a child, two specifications of aggravated sexual contact with a child under twelve years of age, and one specification of assault consummated by battery, in violation of Article 134, UCMJ (2000), Article 120(g), UCMJ (2008), and Article 128, UCMJ (2012). The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for twenty-eight years,[*] and reduction to the grade of E-1.

[*] Corrected

2

charges were received by the SCMCA. More precisely, the 2016 amendments caused the statute of limitations for indecent acts with a child charged under Article 134, UCMJ (2000), to revert from the extended limitations period for enumerated child abuse offenses to the general five-year statute of limitations. We agree and for the reasons set forth below find the Article 134, UCMJ, charge and its specifications were statutorily time-barred when received by the SCMCA in 2017.

Having found the offense and specifications at issue subject to a five-year statute of limitations, we next consider whether appellant forfeited his statute of limitations defense by his silence at trial or whether the military judge committed plain error by failing to advise appellant of his right to assert the statute of limitations defense. We find the latter. Appropriate relief is provided in our decretal paragraph.

## II. BACKGROUND

Appellant victimized both KR and his eleven-year-old stepdaughter, MV.[3]

Between 1 May 2004 and 24 August 2004, at the family home at Fort Campbell, Kentucky, appellant engaged in four indecent acts with KR. He placed his tongue inside her mouth while kissing her, rubbed her vulva with his fingers, placed her hand on his penis, and rubbed his penis against her vulva, all with the intent to gratify his sexual desires.[4] Between 25 August 2004 and 31 December 2004, appellant continued to use his daughter for his own sexual gratification, taking advantage of her while she was at her grandmother's home in Winchester, Illinois. On multiple occasions, appellant penetrated KR's vulva with his finger and placed her hand on his penis.[5]

In 2009, finding himself in a different family situation, appellant focused his sexual desires on MV. On two separate occasions between 24 July 2009 and 6

---

[3] Appellant was acquitted of committing a lewd act in 2016 on his then four-year-old biological daughter, who did not testify at trial (Charge IV and its Specification, sexual abuse of a child, in violation of Article 120b, UCMJ (2012)).

[4] These four acts are the bases for Specifications 1 through 4 of Charge I (indecent acts or liberties with a child, in violation of Article 134, UCMJ (2000)).

[5] These acts are the bases for Specifications 5 and 6 of Charge I (indecent acts or liberties with a child, in violation of Article 134, UCMJ (2000)).

November 2009, in Port Wentworth, Georgia in the family home, appellant engaged in sexual contact with MV by touching her breast under her shirt with his hand.[6]

In 2013, in his marital home, appellant initiated a physical altercation with his third wife, BM, while she was pregnant with their second daughter. BM ran up the stairs to get away from appellant but appellant grabbed BM by her legs and pulled her, on her stomach, down the stairs. Appellant put his hands around BM's neck. She eventually escaped the home and ran to a neighbor's home shirtless, after appellant ripped off her top during the assault.[7] The neighbors called the police.

On 27 March 2017, charges were preferred against appellant. They were received by the SCMCA the same day and referred to a general court-martial on 30 May 2017.[8]

All indecent acts offenses involving KR (Charge I and its Specifications) occurred between 1 May 2004 and 31 December 2004, more than twelve years before charges were preferred and received by the SCMCA.

## III. LAW AND DISCUSSION

### A. Statute of Limitations

The applicable statute of limitations is a question of law, which this court reviews de novo. *United States v. Mangahas*, 77 M.J. 220, 222 (C.A.A.F. 2018) (citing *United States v. Lopez de Victoria*, 66 M.J. 67, 73 (C.A.A.F. 2008)).

Generally, the statute of limitations in effect at the time of the offense applies. *United States v. Briggs*, 78 M.J. 289, 293 (C.A.A.F. 2019) (citations omitted). Subsequent amendments are generally presumed "not to apply because there is both a presumption against retroactive legislation . . . and a presumption in favor of repose." *Id.* (internal citations omitted). "[C]ongressional enactments . . . will not be construed to have retroactive effect unless their language requires this result." *Id.* (quoting *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 208 (1988)); *see also Hassett v. Welch*, 303 U.S. 303, 314 (1938) ("[A] law is presumed, in the absence of clear expression to the contrary, to operate prospectively[.]")

---

[6] These acts are the bases for Specifications 1 and 3 of Charge II (aggravated sexual contact with a child, in violation of Article 120(g), UCMJ (2008)).

[7] This act forms the basis for Specification 1 of Charge III (assault consummated by a battery, in violation of Article 128, UCMJ (2012)).

[8] Charges were received by the SCMCA (and referred) prior to KR's 25th birthday.

4

"Congress, of course, has the power to extend the period of limitations without running afoul of the ex post facto clause, provided the [original] period has not already run." *United States v. Madia*, 955 F.2d 538, 540 (8th Cir. 1992) (quoting *United States v. Richardson*, 512 F.2d 105, 106 (3d Cir. 1975)); *see also Thomas v. United States*, 50 A.3d 458, 464–70 (D.C. 2012) (holding extension of statute of limitations by the Felony Sexual Assault Act of 2004 to reach the defendant's acts in 2000 did not violate the Ex Post Facto Clause of the Constitution as the extension occurred before the previous statute of limitations had run).

In *Stogner v. California*, the Supreme Court noted:

> [W]e agree that the State's interest in prosecuting child abuse cases is an important one. But there is also a predominating constitutional interest in forbidding the State to revive a long-forbidden prosecution. And to hold that such a law is *ex post facto* does not prevent the State from extending time limits for the prosecution of future offenses, or for prosecutions not yet time barred.

539 U.S. 607, 632 (2003). The contrary is true, however, if an amended statute of limitations purports to revive an already time-barred prosecution. "[A]pplying a new statute of limitations to revive a previously time-barred prosecution violates the Constitution's *Ex Post Facto* Clause." *Briggs*, 78 M.J. at 292 n.4 (citing *Stogner*, 539 U.S. at 610).

At issue in appellant's case is the statute of limitations applicable to indecent acts committed in 2004, charged in 2017,[9] and prosecuted to findings in 2018. Stated more precisely, what impact, if any, did the 2016 amendments to Article 43, UCMJ, governing the statute of limitations for Article 134, UCMJ, indecent acts, have on the prosecution of the indecent acts involving KR?

Before addressing the issue in the instant case, we briefly set forth the evolution of both Articles 134 and 43, UCMJ, from their predecessor Articles of War provisions, the former criminalizing indecent acts with a child and the latter providing the statute of limitations both generally and applicable to indecent acts in violation of Article 134, UCMJ.

---

[9] "Charged," as used herein, refers to the preferral of charges and receipt of the preferred charges by the SCMCA, two legally independent acts which, in appellant's case, occurred on the same day, 27 March 2017.

*1. Indecent Acts with a Child in Violation of Article 134, UCMJ*[10]

On 5 May 1950 (effective 31 May 1951), the offense of indecent acts with a child transitioned from a violation of Article 96, Articles of War, to Article 134, UCMJ. Indecent acts with a child under sixteen years of age remained a listed Article 134, UCMJ, offense until 1 October 2007, when Congress amended Article 120, UCMJ.

Indecent acts with a child, committed between 1 October 2007 and 27 June 2012, were now expressly covered by Articles 120(g), UCMJ (aggravated sexual contact with a child), 120(i), UCMJ (abusive sexual contact with a child), and 120(j), UCMJ (indecent liberty with a child). *See Manual for Courts-Martial, United States* (2005 ed.) [*MCM*, 2005], pt. IV, ¶ 87.b. (indecent acts or liberties with a child), deleted by Exec. Order No. 13,447, 72 Fed. Reg. 56179 (Sep. 28, 2007); *see also* National Defense Authorization Act for Fiscal Year 2006 [NDAA FY06], Pub. L. No. 109-163 § 552(a), 119 Stat. 3136, 3257–58; *MCM*, 2008, App'x 23, Analysis of Punitive Articles, A23-22 and App'x 27, Punitive Articles Applicable to Sexual Assault Offenses Committed Prior to 1 October 2007, A27-3; *MCM*, 2019, App'x 20, Punitive Articles Applicable to Sexual Assault Offenses Committed Prior to 1 October 2007, A20-5; *United States v. Verdejo-Ruiz*, 2014 CCA LEXIS 607, *27 (A.F. Ct. Crim. App. 14 Aug. 2014) (unpublished) ("Executive Order 13447 and the 2006 National Defense Authorization Act did not eliminate [indecent acts] in the sense that no one could be prosecuted for [it] if legal action began after 1 October 2007. The Executive Order merely incorporated the amendments to Article 120, UCMJ, and other provisions. It did not bar prosecution of violations of the law as it was written prior to the amendments and the Executive Order.").

In 2011, Congress again amended the UCMJ, creating "Article 120b–Rape and sexual assault of a child," a separate and distinct UCMJ article addressing sexual offenses involving children. *See MCM*, 2012, pt. IV, ¶ 45.b. Indecent acts with a child committed on or after 28 June 2012 were now covered by Article 120b, UCMJ, specifically, Articles 120b(a) (Rape of a Child), 120b(b) (Sexual Assault of a Child), and 120b(c) (Sexual Abuse of a Child). *See MCM*, 2019, App'x 22, Punitive Articles Applicable to Sexual Offenses Committed Between 12 (sic) June 2012 and 31 December 2018, A22-1.[11]

---

[10] As appellant's convictions of Charge I and its Specifications are based on indecent acts only, rather than indecent acts and liberties, this opinion discusses the Article 134, UCMJ, offense simply as "indecent acts."

[11] A review of the 2019 *MCM* reveals that the header for Appendix 22 is in error and should read: "APPENDIX 22, PUNITIVE ARTICLES APPLICABLE TO SEXUAL

(continued . . .)

As a result, indecent acts with a child, depending on when committed, are charged either as a violation of Article 120, 120b, or 134, UCMJ. In appellant's case, although no longer a listed offense in 2017, Article 134, UCMJ remained the proper charge for his 2004 indecent acts committed against KR.

*2. Article 43, UCMJ, Statute of Limitations*

Article 39 of the Articles of War (which established a three-year statute of limitations) was replaced by Article 43, UCMJ, with the passage of the UCMJ in 1951. In 1986, Congress amended Article 43, UCMJ, to extend the general statute of limitations from three to five years for all offenses committed on or after enactment of the statute.[12] UCMJ art. 43 (1986) (as amended by NDAA FY87, Pub. L. No. 99-661, § 805, 100 Stat. 3816, 3908).

In 2003, Congress amended Article 43, UCMJ, to increase the statute of limitations for child abuse offenses. UCMJ art. 43 (2000) (as amended by NDAA FY04, Pub. L. No. 108-136, § 551, 117 Stat. 1392, 1481). The amendment changed the statute of limitations for enumerated "child abuse" offenses, increasing the period from five years from commission of the offense until the victim's twenty-fifth birthday. *Id.* Sworn charges and specifications had to be received by the SCMCA before the victim's twenty-fifth birthday. Indecent acts or liberties with a child was specifically identified as one of the enumerated "child abuse" offenses covered by the extended limitations period. *Id.*

---

(. . . continued)
OFFENSES COMMITTED BETWEEN 28 JUNE 2012 AND 31 DECEMBER 2018." The introduction of paragraph 45b., titled "Article 120b—Rape and sexual assault of a child," states:

> This statute applies to offenses committed between *28 June 2012* and 31 December 2018. Article 120b is a new statute designed to address only child sexual offenses. Previous versions of child sexual offenses are located as follows: for offenses committed on or before 30 September 2007, see Appendix 20; for offenses committed during the
>
> period 1 October 2007 through 27 June 2012, see Appendix 21.

*MCM*, 2019, App'x 22, A22-13 (emphasis added).

[12] The only exceptions to the five-year statute of limitations were absence without leave in a time of war, missing movement in a time of war, and offenses punishable by death—offenses for which there was no limitations period. Indecent acts with a child in violation of Article 134, UCMJ, did not meet any of the exceptions.

7

In 2006, Congress again amended Article 43, UCMJ. The statute of limitations for specified, enumerated child abuse offenses was again extended to allow receipt of sworn charges and specifications by the SCMCA "during the life of the child or within five years after the date on which the offense was committed, whichever provides a longer period." UCMJ art. 43 (2006) (as amended by NDAA FY06, Pub. L. No. 109-163, § 553, 119 Stat. 3136, 3264).

In addition to substantially extending the limitations period for child abuse offenses, Congress expanded the list of offenses which constitute a child abuse offense. The 2006 amendment encompassed all previously enumerated offenses, to include indecent acts with a child in violation of Article 134, and added kidnapping in violation of Article 134, UCMJ. *Id.*

Article 43, UCMJ was next amended in 2011. Subsection (b)(2)(B)(i) was amended to capture the enactment of the new Articles 120a, 120b, and 120c, UCMJ; subsection (b)(2)(B)(v) was amended to delete "indecent assault" and "or liberties with a child." Indecent acts with a child remained an enumerated child abuse offense. UCMJ art. 43 (2011) (as amended by NDAA FY12, Pub. L. No. 112-81, § 541(d)(1), 125 Stat. 1298, 1410).

In 2016 as part of the Military Justice Act (MJA 2016), Congress yet again amended Article 43, UCMJ, extending the statute of limitations for specified child abuse offenses "to receipt of charges and specifications by the [SCMCA] during the life of the child or within ten years after the date on which the offense was committed, whichever provides for a longer period." UCMJ art. 43 (2016) (as amended by NDAA FY17, Pub. L. No. 114-328, § 5225(a), 130 Stat. 2000, 2909).

Congress also modified those offenses that constitute a "child abuse offense," replacing subsections (i) through (v) of Article 43(b)(2)(B), UCMJ, in their entirety with subsections (i) through (iv), as amended. UCMJ art. 43 (2016) (as amended by NDAA FY17, Pub. L. No. 114-328, § 5225(d), 130 Stat. 2000, 2910). Congress specifically deleted indecent acts from the list of offenses that constituted child abuse. *Id.*

Unlike the 2003 and 2006 amendments to Article 43, UCMJ, Congress elected to make the amendments retroactive, making them applicable "to the prosecution of any offense committed before, on, or after the date of the enactment of this subsection if the applicable limitation period has not yet expired." NDAA FY17, Pub. L. No. 114-328, § 5225(f), 130 Stat. 2000, 2910). The enactment date for the act was 23 December 2016. NDAA FY17, Pub. L. No. 114-328 (Dec. 23, 2016).

The following year, in 2017, Congress "clarified" the previous year's statute of limitation's amendment, stating, for "offenses committed before the date designated by the President under section 5542(a)" of the 2016 amendment, the 2016

amendment's changes to Article 43(b)(2)(B), UCMJ, would not apply. *See* NDAA FY18, Pub. L. No. 115-91, § 531(n)(2), 131 Stat. 1283, 1387 (Dec. 12, 2017) ("With respect to offenses committed before the date designated by the President under section 5542(a) of the Military Justice Act of 2016," Article 43(b)(2)(B), UCMJ, "shall be applied as in effect on December 22, 2016."). The date designated by the president pursuant to the NDAA FY17, Pub. L. No. 114-328, § 5542(a) was 1 January 2019. *See* Exec. Order 13,285, 83 Fed. Reg. 9889, 9889 Sec. 3(a) (Mar. 1, 2018) ("Pursuant to section 5542 of the Military Justice Act of 2016 (MJA), division E of the [NDAA FY17], except as otherwise provided by the MJA or this order, the MJA shall take effect on January 1, 2019.").

### 3. *Article 43, UCMJ – Instant Case*

In 2004, the time of appellant's criminal acts against KR, the statute of limitations applicable to indecent acts required that charges be received by the SCMCA before KR's twenty-fifth birthday. UCMJ art. 43 (2000). KR was not yet twenty-five years old when the charges were received by the SCMCA on 27 March 2017. As such, the charges were timely, a fact unchanged by any of the Article 43, UCMJ, amendments from 2004 until the passage of MJA 2016.

The issue in appellant's case arises from the enactment of MJA 2016. Besides extending the applicable statute of limitations for child abuse offenses, MJA 2016 also modified the list of offenses that constitute child abuse. Specifically, "indecent acts" in violation of Article 134, UCMJ, was deleted from that list. Congress expressly made this change to Article 43, UCMJ, retroactive, stating: "The amendments made by subsections (a), (b), (c), and (d) shall apply to the prosecution of any offense committed before, on, or after the date of the enactment of this subsection if the applicable limitation period has not yet expired." NDAA FY17, Pub. L. No. 114-328, § 5225(f), 130 Stat. 2000, 2910). On appeal, appellant argues the extended statute of limitations no longer applied to indecent acts with a child charged under Article 134, UCMJ. Rather, Article 43(b)(1), UCMJ, as applied, subjected appellant's 2004 indecent acts against KR to a five-year limitations period, which expired in 2009. Congress's 2017 clarification, while apparently adjusting the effective date of the 2016 amendments to Article 43(b)(2)(B), UCMJ, fails to address the impact and rationale behind *Stogner* and its progeny. In other words, the 2017 clarification, as it relates to indecent acts with a child, attempts to impermissibly revive an otherwise expired limitations period.

In response to appellant's claim, the government raises four distinct arguments challenging application of any shortened (i.e., five-year) limitations period to appellant's acts. First, the government argues that deletion of indecent acts from the list of enumerated child abuse offenses in Article 43(b)(2)(B), UCMJ, was a non-substantive change having no impact on the applicable statute of limitations for an indecent act committed in 2004. Second, the government argues

the MJA 2016 amendments to Article 43, UCMJ, were not effective until 1 January 2019, thus having no impact on appellant's case. Third, the government argues that any conclusion that MJA 2016 reduced the limitations period for indecent acts leads to an absurd result. Fourth, regardless of this court's position on its other arguments, the government asserts appellant forfeited any statute of limitations defense by failing to raise it at trial. We find none of the government's arguments persuasive.

*B. Government's Rationale for Application of an Extended Limitations Period*

*1. MJA 2016's Substantive Impact on Covered "Child Abuse" Offenses Under Article 43, UCMJ*

The plain language of the 2016 amendments to Article 43, UCMJ, is both clear and unambiguous. After the effective date of the amendment, indecent acts with a child under sixteen years of age was no longer one of the enumerated offenses constituting child abuse. Thus, it was not subject to the extended limitations period. Indecent acts in violation of Article 134, UCMJ, became subject to the general five-year statute of limitations period contained in Article 43(b)(1), UCMJ.

"As in all statutory construction cases, we begin with the language of the statute. The first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). "The inquiry ceases 'if the statutory language is unambiguous and "the statutory scheme is consistent and coherent."'" *Id.* (quoting *Robinson*, 519 U.S. at 340). "The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992)). "Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Id.* (citing *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004)). "When the words of a statute are unambiguous, then the first canon is also the last: 'judicial inquiry is complete.'" *Barnhart* at 461–62 (quoting *Connecticut Nat. Bank*, 503 U.S. at 253–54).

The NDAA FY17 made clear that the previous listing of enumerated offenses that constituted child abuse offenses subject to an extended limitations period was replaced, in its entirety, by the new list. Congress also made clear, via express declaration, that the Article 43, UCMJ, amendments, including the deletion of indecent acts from those offenses subject to the extended limitations period, were retroactive. Subsection 5225(f) stated the amendments applied "to the prosecution of any offense committed *before, on, or after the date of the enactment of this subsection* if the applicable limitation period has not yet expired." (emphasis added).

In other words, the amendments applied to appellant's indecent acts against KR in 2004.

Rather than broadly define those offenses subject to an extended limitations period, Congress chose to specifically list those UCMJ offenses that would "constitute" child abuse. *Compare* 18 U.S.C. § 3283 (titled "Offenses against children" and establishing a statute of limitations of life of the child or ten years from the offense, whichever is longer for "an offense involving the sexual or physical abuse, or kidnapping, of a child under the age of 18 years") *with* UCMJ art. 43 (2016) (as amended by NDAA FY17, Pub. L. No. 114-328 § 5225(a)–(f), 130 Stat. 2000, 2909) (establishing statute of limitations of "life of the child or within ten years after the date on which the offense was committed, whichever provides for a longer period" for specified offenses, those offenses enumerated in Article 43(b)(2)(B)(i)–(iv), UCMJ). That the list was meant to be exhaustive and not illustrative is bolstered by the fact that, in 2006, Congress considered but rejected expanding the list of covered offenses to include child pornography. H.R. REP. No. 109-89, at 332 (2005). *Cf. United States v. Carpenter*, 680 F.3d 1101, 1103–04 (9th Cir. 2012) (per curiam) (citing *United States v. Coutentos*, 651 F.3d 809 (8th Cir. 2011) (holding that the production of child pornography and permitting a minor to engage in sexually explicit conduct were subject to extended limitations period under 18 U.S.C. § 3283).

Notwithstanding the plain language of Article 43, UCMJ, as amended, the government argues that the indecent acts against KR in 2004 are child abuse offenses subject to the extended limitations period. Article 43(b)(2)(B), UCMJ, states, "In subparagraph (A), the term 'child abuse offense' means an act that involves abuse of a person who has not attained the age of 16 years and constitutes any of the following offenses: . . . ." The list that follows does not contain indecent acts. Citing no authority, the government asserts that the listing of offenses found in the subsections of Article 43(b)(2)(B), UCMJ, was not meant to be exhaustive but rather illustrative of those types of offenses that were subject to the extended limitations period. In essence, Congress did not intend to list UCMJ offenses to the exclusion of others.

In support of its argument the government asserts that appellant's actions in 2004, had they been committed today, would be a violation of Articles 120b(a)(1) (rape of a child) and 120b(c) (sexual abuse of a child), UCMJ, both of which are currently enumerated Article 43(b)(2)(B), UCMJ, offenses subject to the extended limitations period. Despite claiming reliance on the "plain meaning of the statute," the government claims, "the nature of appellant's misfeasance, not the article number under which he was charged, is the salient inquiry in determining Congress's intent."

11

We agree that appellant's 2004 offenses, *if* committed today, *would* be offenses properly charged under Article 120b, UCMJ. But appellant's crimes were not committed today. That appellant's offenses *would* be prosecuted today under a statute that did not exist at the time of their commission, and therefore, the current statute of limitations should apply defies basic logic and reasoning.

In addition to running afoul of the Ex Post Facto Clause, acceptance of the government's "nature of appellant's misfeasance" argument would make the language "indecent acts in violation of section 934 of this title (article 134)" found in Article 43, UCMJ, unnecessary surplusage or redundant. The government would have this court read "indecent acts in violation of section 934 of this title (article 134)" back into Article 43(b)(2)(B)(i)–(iv), UCMJ, despite Congress's express deletion of that language. We decline to read back into Article 43, UCMJ, language that Congress was aware of and used in prior versions of the statute but deliberately deleted from the current version. *See Chickasaw Nation v. United States*, 534 U.S. 84, 93 (2001).

The government's reading, in addition to ignoring the plain meaning of a clear and unambiguous statute, ignores the canon of statutory construction *expressio unius est exclusio alterius*, the expression of one thing is the exclusion of the other. *See United States v. Mooney*, 77 M.J. 252, 257 (C.A.A.F. 2018). In addressing when a convening authority can defer service to confinement under Article 57a, UCMJ, our superior court noted:

> Instead of granting convening authorities broad discretion to defer confinement, Congress has constrained this power to when certain conditions are met. Under the UCMJ, those prerequisites are: (1) the member is "in the custody of a State or foreign county," (2) the member is "temporarily returned by that State or foreign country to the armed forces for trial by court-martial," and (3) "after the court-martial, [the member] is returned to that State or foreign country under the authority of a mutual agreement or treaty." Article 57a(b)(2), UCMJ. Under the canon of statutory construction expressio unius est exclusio alterius (the inclusion of one is the exclusion of others), it follows that when Congress expressly provided for deferment when a member is in custody of a state or foreign country, they intended to exclude when a member is in custody of the federal government.

*Id.* (citations omitted); *see also United States v. Murphy*, 74 M.J. 302, 309–10 (C.A.A.F. 2015) (Erdmann, J., concurring in result) (applying the "canon of statutory construction" *expressio unius est exclusio alterius* to conclude that "ammunition" did not constitute an explosive under Rule for Courts-Martial (R.C.M.) 103(11)). "Specifically, because the expression of one thing is the exclusion of another we must presume that the exclusion of "ammunition" is

intentional. As such, we should not read ammunition into the plain language of the statute." *Id.* (Erdmann, J., concurring in result) (citation omitted).

As further support for its position, the government points to Congress's designation of section 5225(d) as "Conforming amendments," arguing that conforming amendments cannot result in a substantive change in the law. We disagree.

The government cites to *Asociacion de Empleados del Area Canalera v. Pan. Canal Comm'n.*, 329 F.3d 1235 (11th Cir. 2003) in support of its position. Footnote 3 of the opinion, however, undermines the government's argument. The court stated:

> In the case at bar, the [Panama Canal Commission] contends that technical and conforming amendments "do not make substantive changes in the law." However, as *Harris v. PPG Industries, Inc.*, 446 U.S. 578 (1980), and *Director of Revenue of Missouri v. CoBank ACB*, 531 U.S. 316, (2001), illustrate, this argument is untenable. . . . In short, the [Panama Canal Commissions'] generalization that technical and conforming amendments never make substantive changes in the law is simply unwarranted.

*Id.* at 1240 n.3.

Indecent acts with a child in violation of Article 134, UCMJ, committed in 2004 is a separate and distinct crime that could not then, now, or any time in the future be charged as a violation of either Article 120 or 120b, UCMJ. When Congress amended Article 43, UCMJ, to remove indecent acts with a child from those crimes subject to an extended limitations period, it effectuated a substantive change in law. That the change was labeled "Conforming amendments" does not change our conclusion.

To accept the government's position focusing on "the nature of appellant's misfeasance," rather than the article number under which appellant was charged, disregards plain and unambiguous statutory language, ignores the simple fact that Congress knows how to list or exclude covered offenses when passing legislation, and, would provide prosecutors, and this court, with discretion that Congress knew how to give but chose not to. Most importantly, acceptance of the government's argument leads to more litigation and uncertainty as parties and the trial courts struggle over whether an offense in a particular case constitutes a "child abuse offense" for purposes of the extended statute of limitations absent clear congressional direction. We decline to impose this unnecessary burden on the military justice system.

## 2. *Effective Date of Congressional Amendment to Article 43(b)(2)(B), UCMJ*

On 23 December 2016, Congress removed indecent acts with a child from the list of enumerated offenses benefitting from an extended limitations period, making the general five-year statute of limitations the applicable statute of limitations. On 27 March 2017, appellant was charged with committing indecent acts against KR in violation of Article 134, UCMJ, acts committed in 2004. Nine and a half months later, on 12 December 2017, Congress attempted to revive the now time-barred prosecution of appellant's 2004 acts against KR by "clarifying" its MJA 2016 amendment of Article 43(b)(2)(B), making the MJA 2016 change to Article 43(b)(2)(B) effective on 1 January 2019.[13]

Despite the simple yet clear timeline regarding the evolution of Article 43(b)(2)(B) post-MJA 2016, the government argues that both the NDAA FY17 § 5542(a) and Executive Order 13,825 make clear that the Article 43 amendments were not effective until 1 January 2019. That reliance is misplaced and ignores the plain text of both cited authorities. Both the NDAA FY17 and the Executive Order make clear that, at the time appellant was charged, § 5225(f) governed the effective date of the changes in § 5225(a)–(d).

Section 5225(f) of the NDAA FY17 made the changes to Article 43, UCMJ, retroactive. Section 5225(f) reads: "Application. The amendments made by subsections (a), (b), (c), and (d) shall apply to the prosecution of any offense committed before, on, or after the date of the enactment of this subsection [23 Dec 16] if the applicable limitation period has not yet expired." NDAA FY 17, Pub. L. No. 114-328, § 5225(f), 130 Stat. 2000, 2910.

Section 3(a) of Executive Order 13,825 states: "Pursuant to section 5542 of the Military Justice Act of 2016 (MJA), division E of the National Defense Authorization Act for Fiscal Year 2017, Public Law 114-328, 130 Stat. 2000, 2967 (2016), *except as otherwise provided by the MJA or this order*, the MJA shall take effect on January 1, 2019." Exec. Order No. 13,825, 83 Fed. Reg. 9889, 9889 (March 1, 2018) (emphasis added).

---

[13] Although not before this court, of note is the fact that the 2017 "clarification" does nothing to address the absence of "indecent acts with a child" from the 2019 covered "child abuse" offenses." In other words, assuming arguendo that the "clarification" somehow revived the expired statute of limitations or that the statute of limitations never reverted to the general five-year limit, effective 1 January 2019, indecent acts with a child would, by the very terms of the statute, revert to an offense covered by the shortened five-year limitations period.

In 2017 Congress passed what it termed, "[c]larifying amendments related to the Uniform Code of Military Justice reform by the Military Justice Act of 2016." NDAA FY18, Pub. L. No. 115-91, § 531, 131 Stat. 1283, 1384. Section 531(n)(2) addressed the effective date of its 2016 Article 43, UCMJ, changes. That section expressly states, "With respect to [child abuse] offenses committed before the date designated by the President under section 5542(a) of the Military Justice Act of 2016 (division E of Public Law 114-328; 130 Stat. 2967), subsection (b)(2)(B) of section 843 of title 10, United States Code (article 43 of the [UCMJ], shall be applied as in effect on December 22, 2016." 131 Stat. 1283, 1387. In other words, the pre-MJA 2016 listing of covered offenses (i.e., pre-MJA 2016 Article 43(b)(2)(B)(i)–(v), UCMJ) applied and only on 1 January 2019 would the new listing of covered offenses (i.e., MJA 2016 Article 43(b)(2)(B)(i)–(iv), UCMJ) take effect.

As with the discussion above regarding "conforming amendments," we find Congress' "clarifying amendments" label addressing its changes to the statute of limitations for covered child abuse offenses of little import.

In 2016, Congress modified the statute of limitations in three distinct areas: duration, covered offenses, and applicability. Duration was extended by five years, coverage was narrowed by omitting indecent acts with a child under sixteen years of age, and, applicability extended to all covered offenses, past, present, and future, for which the statute of limitations had not yet expired. In 2017, Congress modified its amendment from the prior year, an amendment modifying the covered offenses impacted by MJA 2016. Until 1 January 2019, child abuse offenses would be those designated under the pre-MJA 2016 version of Article 43(b)(2)(B), UCMJ; effective 1 January 2019, those offenses subject to an extended limitations period would be those enumerated under the MJA 2016 version of Article 43(b)(2)(B), UCMJ.[14]

The government would have this court ignore Congress's 23 December 2016 action and conclude that Article 43, UCMJ, as amended by MJA 2016, applies only to offenses committed on or after 1 January 2019 in all cases. To do so requires a complete disregard of the plain language of the statute as it existed between 23 December 2016 and 11 December 2017, the day prior to Congressional "clarification" of the MJA 2016 amendments to Article 43(b)(2)(B), UCMJ. It would also require this court to ignore the Court's decision in *Stogner* where the Court noted "a predominating constitutional interest in forbidding the State to revive a long-forbidden prosecution." 539 U.S. at 632. While not necessarily a "new

---

[14] The 2017 clarification did nothing to affect the changes to both duration and applicability. The MJA 2016 statute of limitations enlargement by five years remained effective as of 23 December 2016. Further the enlargement applied to all offenses past, present, and future for which the statute of limitations period had not yet expired.

statute of limitations" or affecting a "long-forbidden prosecution," Congress's action in 2017, at least as it relates to indecent acts with a child committed on or before 11 December 2017, is nothing more than an attempt to revive a "previously time-barred prosecution" and thus violates the Constitution's Ex Post Facto Clause. *Briggs*, 78 M.J. at 292 n.4 (citing *Stogner*, 539 U.S. at 610).

### 3. The Absurdity Doctrine

In statutory construction terms, the government argues that to exclude indecent acts with a child in violation of Article 134, UCMJ from the expanded limitations period applicable to "child abuse" offenses leads to an "absurd" result contrary to the policy behind the expanded limitations period. We disagree.

"When the ordinary meaning of a statute would lead to absurd results, courts will seek an alternative reading of the statutory text pursuant to the absurdity doctrine." Linda D. Jellum, *But That Is Absurd!: Why Specific Absurdity Undermines Textualism*, 76 BROOK. L. REV. 917, 917 n.2 (2011). Some see the absurdity doctrine as "avowedly results-oriented." Laura R. Dove, *Absurdity in Disguise: How Courts Create Statutory Ambiguity to Conceal Their Application of the Absurdity Doctrine*, 19 NEV. L.J. 741, 755 (2019). Others, however, view the doctrine as avoiding "needless harm" while promoting "constitutional norms of equal treatment and fundamental fairness." Glen Staszewski, *Avoiding Absurdity*, 81 IND. L.J. 1001, 1043, 1065 (2006).

Regarding application of the absurdity doctrine, the Supreme Court has said, "to justify a departure from the letter of the law upon that ground, the absurdity must be so gross as to shock the general moral or common sense." *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930). Over half a century later, the Court noted, "this Court rarely invokes such a test to override unambiguous legislation." *Barnhart*, 534 U.S. at 459 (citations omitted). "It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed." *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1882).

The government argues that to interpret the recent amendments to Article 43, UCMJ, to exclude appellant's actions "runs counter to the intent and purpose behind Article 43, UCMJ," which has been to increase the limitations period for child abuse offenses. In essence, the government asks that we supply that which was omitted or, in this case, deleted. To do so would transcend our judicial function, which we will not do. To the extent that our decision raises policy concerns, the Supreme Court has made clear that "courts aren't free to rewrite clear statutes under the banner of our own policy concerns." *Azar v. Alina Health Servs.*, 139 S. Ct. 1804, 1815 (2019). Applying the same sentiment to the interpretation of Article 43, UCMJ, our

superior court recently reiterated that "[p]olicy arguments are relevant to the question whether Congress should amend Article[] . . . 43, UCMJ, not what the text of [it] says." *United States v. Moore*, 79 M.J. 483, 488 (C.A.A.F. 2020).

Recently, in an unpublished decision, another panel of this court, when faced with a similar question to that presented by appellant's case, employed the absurdity doctrine to hold that indecent liberties under Article 134, UCMJ, was subject to the extended limitations period of Article 43, UCMJ as amended by MJA 2016. *See United States v. Adams*, ARMY 20130693, 2020 CCA LEXIS 232 (Army Ct. Crim. App. 13 Jul. 2020) (mem. op.). At issue in *Adams* was the applicability of the MJA 2016 amendments to a charge of indecent liberties with a child in violation of Article 134, UCMJ. *Id.* at *10. In rejecting application of the shortened limitations period, the *Adams* court noted, "the 2017 NDAA's legislative history, as well as Congress' previous amendments to Articles 43 and 120, compel us to find that the plain reading of the statute would limit its application in a manner that Congress did not intend." *Id.* at *14 n.20. Reading *Adams* in its entirety, we agree with our colleagues that the plain, unambiguous text of the amended statute excluded indecent liberties from the extended limitations period. However, we disagree with their determination that "excluding indecent liberties [with a child] under Article 134 from the list of child abuse offenses would lead to an absurd and unintended result," *Id.* at *14, when applying the limited scope and reach of the absurdity doctrine.

First, MJA 2016 did nothing to impact "indecent liberties" with a child. In addressing the statute of limitations issue, the *Adams* panel noted, in part, "[f]rom 2003 to 2017, Congress amended the SOL for child abuse offenses three times." *Id.* at *11. The three occasions referenced by the panel were 2003, 2006, and 2017, the latter being the passage of MJA 2016. The panel went on to note, "[t]he 2017 NDAA also struck indecent liberties from the list of child abuse offenses in Article 43, UCMJ." *Id.* at *13. Indecent liberties with a child, however, was deleted from the list of enumerated offenses in the 2011 amendments to Article 43, UCMJ. *See* UCMJ art. 43 (2011) (as amended by NDAA FY12, Pub. L. No. 112-81, § 541(d)(1), 125 Stat. 1298, 1410).

Further, the *Adams* panel's reliance on legislative history to both interpret the recent amendments to Article 43, UCMJ, as well as support for its absurdity conclusion is misplaced. Legislative history, to the extent that there is any, is relevant when clarifying ambiguities or expounding upon that which is unclear. When the text of the statute is clear and unambiguous, courts have "no occasion to resort to legislative history." *BedRoc Ltd., LLC*, 541 U.S. at 186 (citation omitted); *see Azar*, 139 S. Ct. at 1814 (quoting *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018)) ("'[L]egislative history is not the law.'"); *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 568 (2005) ("[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a

role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms.").

Review of MJA 2016 and its legislative history provides no insight into removal of indecent acts with a child from the listing of enumerated child abuse offenses, let alone "indecent liberties" which, as noted above, was removed from the listing of covered offenses five years earlier. The absence of any relevant legislative history (i.e., commentary or discussion regarding deletion of indecent acts with a child) does not and cannot add clarity to the amendment at issue.

In *Exxon Mobil Corp.*, the Court observed, "[j]udicial investigation of legislative history has a tendency to become, to borrow Judge Leventhal's memorable phrase, an exercise in '"looking over a crowd and picking out your friends.'" 545 U.S. at 568 (citation omitted). Fourteen years late in *Azar*, the Court noted, "even those of us who believe that clear legislative history can 'illuminate ambiguous text' won't allow 'ambiguous legislative history to muddy clear statutory language.'" 139 S. Ct. at 1814 (quoting *Milner v. Department of the Navy*, 562 U.S. 562, 572 (2011)).

Looking over the crowd, there are no friends to be found. While we recognize that Congress has generally extended the statute of limitations for child abuse offenses, we also note that Congress, in the military context, has always specified those offenses subject to the extended limitations period found in Article 43, UCMJ, by listing the punitive article. More importantly, from 2003 until the passage of MJA 2016, covering no less than four amendments of Article 43, UCMJ, Congress specifically identified Article 134, UCMJ, indecent acts with a child as an offense subject to an extended limitations period. Even after removal of indecent liberties with a child from the listing of enumerated offenses in 2011, indecent acts with a child remained.

The issue we confront is removal of a specific offense from those covered by the ever-expanding limitations period, an offense Congress knew how to both include and exclude. The legislative history regarding its exclusion is silent. Further, resort to the "contemporary legal context" at the time MJA 2016 was passed provides no insight into the rationale or reasoning behind removal of indecent acts from the list of covered "child abuse" offenses. *See, e.g., United States v. McDonald*, 78 M.J. 376, 380 (C.A.A.F. 2019) (evaluating the appropriate *mens rea* for sexual assault by bodily harm in violation of Article 120, UCMJ, by considering, in part, the "contemporary legal context" at the time the statute was passed).

For a court to employ the absurdity doctrine, "[i]t is not enough merely that hard and objectionable or absurd consequences, which probably were not within the contemplation of the framers, are produced by an act of legislation." *Crooks*, 282 U.S. at 60. "Laws enacted with good intention, when put to the test, frequently, and

to the surprise of the law maker himself, turn out to be mischievous, absurd or otherwise objectionable." *Id.* But when such laws effect undesirable or perhaps unintended results, "the remedy lies with the law making authority, and not with the courts." *Id.* (citation omitted). We decline to employ the absurdity doctrine in order to fix the unfortunate, and likely unintended consequences of this case.

### 4. *Plain Error*

The government's final argument is that, absent plain error, appellant forfeited any statute of limitations defense by failing to raise the issue at trial. *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009).

To establish plain error, appellant must show: "'(1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights.'" *Briggs*, 78 M.J. at 295 (quoting *United States v. Armstrong*, 77 M.J. 465, 469 (C.A.A.F. 2018)). "Plain error is assessed at the time of appeal." *Id.* (citing *United States v. Harcrow*, 66 M.J. 154, 159 (C.A.A.F. 2008)).

Having considered the plain and unambiguous text of the statutory amendment to Article 43, UCMJ, enacted on 23 December 2016, we find that on 27 March 2017, the indecent acts charge and specifications relating to KR were subject to a five-year statute of limitations and thus, time-barred. Rule for Courts-Martial 907(b)(2)(B) "requires the military judge to inform the accused of the right to assert the statute of limitations." *Briggs*, 78 M.J. at 295; *see United States v. Thompson*, 59 M.J. 432, 439 (C.A.A.F. 2004). At no time during appellant's contested trial did the military judge advise appellant of a potential statute of limitations issue. By failing to advise appellant of the right to assert a viable statute of limitations defense, we conclude the military judge erred.

Addressing whether the error was clear or obvious, we apply the law at the time of appeal and consider, among other things, whether other courts have "reached conflicting conclusions on the question." *United States v. Gonzales*, 78 M.J. 480, 486–87 (C.A.A.F. 2019) (finding appellant failed to establish that the error in his case was clear or obvious, in part, because this court and our sister court had reached conflicting conclusions on the question). Here, other than *Adams*, we are unaware of any other opinion from our superior court or sister courts addressing this issue. Notwithstanding *Adams*, we nevertheless find the error in this case is clear and obvious at the time of appeal for three reasons.

First, as analyzed above, the text of the statute is plain and unambiguous, therefore its meaning is not "subject to reasonable dispute" or "reasonable doubt." *Gonzales*, 78 M.J. at 486–87 (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)). Even the *Adams* panel acknowledged that the text was not ambiguous. 2020 CCA LEXIS 232 at *14 & n.20. Different conclusions aside, there is unity on

the plain meaning of the statutory provisions at issue. Additionally, we conclude *Adams* resulted from an improper reading and application of Supreme Court precedent; the panel reached for the lifelines of legislative history and absurdity, neither of which are available when addressing clear and unambiguous statutes. Finally, we reiterate that *Adams* dealt with a different offense than this case, specifically an indecent liberty rather than an indecent act. Given Congress's different historical treatment of these offenses, we need not, and do not, view *Adams* as controlling or persuasive for purposes of analyzing appellant's offenses. *See* UCMJ art. 43 (2011) (as amended by NDAA FY12, Pub. L. No. 112-81, § 541(d)(1), 125 Stat. 1298, 1410). For these reasons, we conclude that the error in this case was clear or obvious.[15]

Having found the military judge plainly erred, we next determine whether the error resulted in material prejudice to appellant's substantial rights. Similar to our superior court's findings in *Briggs*, it requires little speculation on our part to conclude that appellant would have sought dismissal of Charge I and its specifications had he been advised of the five-year limitations period.

> This clear and obvious error warrants relief because the error results in material prejudice to [Appellant's] substantial rights. If the military judge had informed Appellant of a possible statute of limitations defense, it requires no speculation to believe that Appellant would have sought dismissal.

*Briggs*, 78 M.J. at 296. A similar conclusion follows in this case. As such, we find appellant prevails on all three prongs of the plain-error analysis.

"At bottom, [this case] involve[s] no more than the straightforward application of legal terms with plain and settled meanings." *Bostock*, 140 S. Ct. at 1743. On the facts before us, indecent acts with a child in violation of Article 134, UCMJ committed in 2004 and charged in March of 2017 was subject to a five-year statute of limitations. Having found a clear and obvious error resulting in material prejudice to appellant's substantial rights, the appropriate remedy is dismissal of Charge I and its Specifications.

---

[15] While we believe our determination that the error is clear or obvious results from a faithful application of the plain-error doctrine, having identified a legal error, our analysis need not turn on its degree of patency. *See United States v. Armstrong*, 54 M.J. 51, 53 (C.A.A.F. 2000) (citing *United States v. Powell*, 49 M.J. 460, 464 (C.A.A.F. 1998) ("[A] court of criminal appeals is not constrained by the plain-error doctrine."). Instead, our statutory authority is bracketed by Articles 59 and 66, UCMJ; the former constraining our ability to reverse, the latter constraining our ability to affirm. *See Powell*, 49 M.J. at 464.

### C. Sentence Reassessment

Having set aside appellant's statutorily time-barred convictions, we apply the factors set forth in *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013) to determine whether we can reassess appellant's sentence without returning this case for a sentence rehearing. We consider four non-exhaustive factors: (1) dramatic changes in the penalty landscape and exposure; (2) whether appellant was sentenced by members or a military judge alone; (3) whether the nature of the remaining offenses capture the gravamen of criminal conduct included within the original offenses and, in related manner, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses; and (4) whether the remaining offenses are of the type that judges in our positions have the experience and familiarity with to reliably determine what sentence would have been imposed at trial. *Id.*

Although appellant's confinement exposure is reduced by 51%, from eighty-two years and six months to forty years and six months, the change in the penalty landscape is not so dramatic as to mandate remand. Appellant still faced a lengthy period of confinement—more than four decades—and the remaining components of his potential sentence are unchanged.

Appellant was sentenced by a military judge alone, which weighs in favor of reassessment. *See id.* at 16 ("As a matter of logic, judges of the courts of criminal appeals are more likely to be certain of what a military judge would have done as opposed to members.").

The remaining sexual offense involving MV "capture[s] the gravamen of criminal conduct included within the original offenses." *Id.* Appellant is a child molester who victimized his stepdaughter for his own sexual gratification. That MV was appellant's stepdaughter and not his natural daughter is a distinction without a difference when considering the heinous nature of appellant's actions and its lifelong impact on his victim.

In her unsworn statement on sentencing,[16] MV noted, in part:

---

[16] "A crime victim of an offense of which the accused has been found guilty has the right to be reasonably heard at a sentencing hearing relating to that offense." R.C.M. 1001A(a). In a non-capital case, "the 'right to be reasonably heard' means the right to make a sworn or unsworn statement." R.C.M. 1001A(b)(4)(B). *See generally United States v. Hamilton*, 78 M.J. 335, 342 (C.A.A.F. 2019) ("[U]nsworn victim impact statements are uniquely situated in the substrate of the sentencing process").

Being molested by [appellant] has had a detrimental effect on my life. I was a ten-year-old girl when he began touching me. I was trying to adapt to the transition from being in elementary school to being in middle school as well as coping with the move to Georgia. I was facing bullies at school, and I would come home to what I thought would be my refuge, where I thought I would be safe, but instead I was preyed upon by an adult man, a man who I trusted to be my stepfather, my protector. The stepfather I trusted became the man I feared. I tried making sense of what was happening to me because I was so confused and hurt. I became severely depressed and suicidal, thought about killing myself all the time. I would cut myself. . . . The effects of the actions this man committed still haunt me every day. I struggle with depression and anxiety. I have nightmares and trouble sleeping. My sense of self-worth is distorted because my own stepfather, who I considered my dad, didn't care enough about me to not hurt me. I am still dealing with the aftereffects of [appellant's] actions.

Child sexual abuse and domestic violence offenses, offenses of which appellant remains convicted, are unfortunately, "the type [of offenses] that [we] have the experience and familiarity with to reliably determine what sentence would have been imposed at trial." *Winckelmann*, 73 M.J. at 16.

Applying the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), and *Winckelmann*, we are confident that the military judge would have adjudged a sentence no less severe than a dishonorable discharge, confinement for fifteen years,[17] and reduction to the grade of E-1.

## IV. CONCLUSION

The findings of guilty to Charge I and its Specifications are SET ASIDE and DISMISSED. The remaining findings of guilty are AFFIRMED. We AFFIRM only so much of the sentence as provides for a dishonorable discharge, confinement for fifteen years,[18] and reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision are ordered restored.

Judge WALKER concurs.

---

[17] Corrected

[18] Corrected

Judge SALUSSOLIA, concurring in the result.

I concur with the majority opinion in that Article 43, UCMJ, as amended by MJA 2016 must be read as having removed the Article 134, UCMJ, offense of indecent acts with a child from those offenses subject to the extended statute of limitation (SOL). I write separately to address briefly three distinct issues: (i) the possibility that Article 43, UCMJ, has two plausible interpretations; (ii) application of the absurdity doctrine; and (iii) application of the plain-error doctrine.

The government asserts that the proper reading of the language of Article 43, UCMJ, as amended by MJA 2016, applies the extended SOL to the Article 134, UCMJ, offenses for which appellant stands convicted. In the government's view, "the nature of appellant's misfeasance, not the article number under which he was charged, is the salient inquiry in determining Congress's intent here." In other words, an offense qualifies for the extended SOL so long as the *conduct* aligns with one the offenses enumerated therein—even if the *offense* itself is not enumerated. Assuming arguendo that the government's interpretation is a plausible alternative to the reading adopted by the majority opinion, this court would then face the issue of resolving a statutory ambiguity. We would have to decide which of the two plausible interpretations is correct. In such an instance, I would still decide in favor of appellant.

My reasoning is to twofold. First, I am unable to discern sufficient congressional intent to make a determination concerning which of the two plausible interpretations should control. I have reviewed the scant legislative history to include recent legislative amendments to Article 43, UCMJ, and find them unhelpful. For instance, while these amendments indicate that Congress has generally intended to increase the SOL for some child abuse offenses, it has chosen not to apply the increased SOL to all child abuse offenses. More importantly, these amendments also indicate that Congress routinely updated Article 43, UCMJ, to comport with other changes to the UCMJ. For example, when Congress moved the offense of indecent acts with a child to Article 120, UCMJ, it continued to list the former Article 134, UCMJ, version of the offense in Article 43, UCMJ. *Compare* UCMJ art. 43(b)(2)(B)(v) (2012) (enumerating "indecent acts in violation of [Article 134, UCMJ]" as an offense subject to an extended SOL) *with MCM* (2012), ¶ 87 (noting the deletion of indecent acts with a child as an offense under Article 134, UCMJ).

Because I find the congressional intent regarding this issue unclear and unhelpful, I apply the rule of lenity. This rule requires that ambiguities concerning the breadth of a criminal statute be resolved in the defendant's favor. *United States v. Davis*, 139 S. Ct. 2319, 2333 (2019); *United States v. Santos*, 553 U.S. 507, 514 (2008) (citation omitted); *see United States v. Thomas*, 65 M.J. 132, 135 n.2 (C.A.A.F. 2007) ("We have long adhered to the principle that criminal statutes are to be strictly construed, and any ambiguity resolved in favor of the accused."). Again assuming that Article 43, UCMJ, as amended by MJA 2016 is ambiguous, I would

use the rule of lenity to choose the plausible interpretation held by the majority opinion as it resolves the matter in favor of appellant.

Next, I briefly write on the application of the absurdity doctrine. While I agree with the majority's holding that the doctrine should not be used to change the otherwise plain and unambiguous meaning of Article 43, UCMJ, my reasoning differs slightly. My understanding is that one "claiming that the plain, unequivocal language of a statute produces an absurd result must surmount a formidable hurdle." *Robbins v. Chronister*, 435 F.3d 1238, 1241 (10th Cir. 2006). "It is not enough to show that the result is contrary to what Congress (or, perhaps more accurately, some members of Congress) desired." *Id.* Rather, we apply the absurdity doctrine "only when it would have been unthinkable for Congress to have intended the result commanded by the words of the statute—that is, when the result would be 'so bizarre that Congress could not have intended it.'" *Id.* (quoting *Demarest v. Manspeaker*, 498 U.S. 184, 190–91 (1992)). In the instant case, I simply find the government has not surmounted this formidable hurdle.

Lastly, I address and respectfully disagree with the majority's holding regarding the application of the plain-error doctrine to the instant case, specifically the conclusion that the error in this case was clear and obvious. The majority concludes the military judge plainly erred by not advising appellant of a potential SOL defense based on Article 43, UCMJ, as amended by MJA 2016. Even recognizing that plain error is assessed at the time of appeal, I find that the error was not clear and obvious either at the time of the trial or on appeal. For one, there is no decision on this issue from our superior court. *Cf. United States v. Briggs*, 78 M.J. 289, 295–96 (C.A.A.F. 2019) (finding the SOL error clear and obvious only through a retroactive application of *United States v. Mangahas*, 77 M.J. 220 (C.A.A.F. 2018)). Additionally, the only military court of criminal appeals decision on this issue is from another panel of this court, and its holding is in conflict with ours in the instant case. *See United States v. Adams*, ARMY 20130693, 2020 CCA LEXIS 232 (Army Ct. Crim. App. 13 Jul. 2020) (mem. op.). The internal conflict between panels of this court on this issue suggests that the issue in this case is, at a minimum, "subject to reasonable dispute." *United States v. Gonzales*, 78 M.J. 480, 486–87 (C.A.A.F. 2019) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)) (noting that "conflicting conclusions" between two military courts of criminal appeals on an issue cut against a determination that the error in question was clear and obvious). Notwithstanding my disagreement with the majority opinion that the error in this case was clear and obvious, I would nevertheless exercise this court's unique authority under Article 66, UCMJ, to notice the forfeited error and grant relief. *See United States v. Conley*, 78 M.J. 747, 750 (Army Ct. Crim. App. 2019) (citing *United States v. Britton*, 26 M.J. 24, 27 (C.M.A. 1988)).

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court